IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUDIE C. GILLASPY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| V. | § | |
| | § | 3:04-CV-2055-K |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dallas Independent School District's ("DISD")

Motion for Summary Judgment. For the following reasons, the Court **GRANTS** the

motion.

## I.    Factual and Procedural Background

DISD's Board of Trustees selected Aramark Service Master ("Aramark") to

manage DISD's Custodial Services Department ("Department") in March 2003. When

Aramark took over management, the structure of the Department was changed. The

position that Plaintiff Judie Gillaspy ("Gillaspy") held, Field Supervisor, was eliminated

in favor of the Area Custodial Supervisor ("ACS"). After being notified the Field

Supervisor position was eliminated, four Field Supervisors, including Gillaspy, applied

for, and ultimately were interviewed for, the ACS positions. The new ACS position

reports to Area Managers, who are employees of Aramark, including former DISD

employee Marcus Miller, Gillaspy's former direct supervisor.

The interview process consisted of one-on-one interviews with seven Area Managers, including Mr. Miller.  During her interview with Mr. Miller, Gillaspy alleges he told her she was qualified for the job, but that "they really only wanted to hire men" for the ACS positions.  Each of the interviewers scored the candidates and turned the evaluations into Rica Hernaez, Resident District Manager and Executive Director of the Custodial Services Department and an Aramark employee, who made the final hiring decision.  Gillaspy was one of ten candidates and the only female interviewed for the position.  She was also the only former Field Supervisor of the four who applied and were interviewed who was not promoted to an ACS position.  Gillaspy was then reassigned as a Facility Supervisor due to the reorganization.

Gillaspy filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 7, 2003 alleging gender discrimination.  After filing her EEOC charge, Gillaspy remained employed with DISD and continued to seek out other positions within DISD.  In August 2003, Gillaspy applied for, and was denied, another ACS position.  Again in June/July 2004, Gillaspy applied for and was denied another ACS position.  She also applied for a Field Supervisor position in DISD's Maintenance Services department in January 2004 and February of 2004.  She was not hired for either of those positions.

The EEOC issued a determination and a right-to-sue letter on March 10, 2004.

After receiving the right-to-sue letter, Gillaspy filed this suit asserting gender discrimination and retaliation claims.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322-25.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial.  *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57(1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III.    Gender Discrimination

Gillaspy claims she was discriminated against because of her gender when DISD (1) failed to re-hire and/or promote her to an ACS position in May/June 2003, August 2003, and June/July 2004; (2) failed to re-hire her for other Field Supervisor positions

3

in January 2004 and February 2004; and (3) demoted her to Facility Supervisor in May/June 2003.

### A.   Applicable Law

Under the Civil Rights Acts of 1964 and 1991, it is illegal for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate with respect to compensation, terms, conditions, or privileges of employment on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). An illegal employment practice is established when the plaintiff demonstrates that sex was a motivating factor for any employment practice, even though other factors also motivated the practice. *Id.* Discrimination claims may be proven by direct or circumstantial evidence. *Rachid v. Jack in the Box*, 376 F.3d 305, 309 (5th Cir. 2004). Direct evidence is evidence that proves discriminatory animus without the need for inference or presumption. *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Direct evidence may include statements made by the employer or certain of its personnel which prove on their face that an improper criterion was not necessarily the sole basis, but at least part of the reason for the adverse employment action. *See Fabela v. Socorro Indep. School Dist.,* 329 F.3d 409, 415 (5th Cir. 2003). When there is direct evidence of discrimination, the burden shifts to the defendant to show by a preponderance of the evidence that the same decision would have been made absent the discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989).

Because direct evidence of discrimination is rare, circumstantial evidence is

permitted. *See Mooney*, 54 F.3d at 1216. Title VII claims based on circumstantial evidence are evaluated using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The plaintiff must first establish a prima facie case of discrimination, which "creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once that step has been met, the burden shifts to the employer to establish a legitimate, nondiscriminatory reason for the employment decision. *Id.* The Supreme Court has held that the employer's burden is one of production, not persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Sufficient evidence includes affidavits from interviewers and contemporaneous evaluation forms used in the interview. *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1088 (5th Cir. 1994). The plaintiff may satisfy the third step of the *McDonnell Douglas* test by providing evidence of either pretext or mixed motives. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003); *Rachid*, 376 F.3d at 312. Under the pretext scenario, the plaintiff must establish that the employer's non-discriminatory reason is not true, "but is instead a pretext for discrimination." *Rachid*, 376 F.3d at 312. Under the mixed motives scenario, the plaintiff must establish that the employer's reason, although true, "is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* Under the mixed motives alternative, if the plaintiff provides sufficient evidence that discrimination was a motivating factor in the

5

employment decision, the burden shifts to the employer to prove that it would have taken the same action regardless of any discriminatory animus. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005).

     1.     Direct Evidence of Discriminatory Hiring Practice

Direct evidence is evidence that proves discriminatory animus without the need for inference or presumption. *Brown*, 989 F.2d at 861. Direct evidence may include statements made by the employer or certain of its personnel which prove on their face that an improper criterion was not necessarily the sole basis, but at least part of the reason for the adverse employment action. *See Fabela,* 329 F.3d at 415.

Gillaspy alleges that Mr. Miller, one of seven interviewers, told her during the interview that "they" wanted to hire only men for the ACS positions. Such a statement could be direct evidence of discrimination if the statement is: (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the adverse employment action; (3) made by an individual with authority over the decision at issue; and (4) related to the employment decision. *See Krystek v. Univ. of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999). There is no question that Mr. Miller's alleged statement is directed towards women, the protected class of which Gillaspy is a member. It was also proximate in time to filling the vacant ACS positions as the statement was made during the interview. The statement also relates to those hirings. However, whether this statement was made by an individual with authority over the hiring

6

decision at issue is not clear.

Each applicant interviewed one-on-one with each of the seven interviewers. Each interviewer then scored the applicant and forwarded the information onto Ms. Hernaez, who unilaterally made the hiring decision. Gillaspy alleges Mr. Miller made the "only men" statement during the interview, then gave her a negative recommendation. Gillaspy testified that no other interviewer, including Ms. Hernaez, discriminated against her. However, Gillaspy argues the only logical conclusion is that Ms. Hernaez must have accepted Mr. Miller's negative recommendation Gillaspy not be hired, regardless of any other interviewer's recommendation, because Ms. Hernaez had no personal knowledge about Gillaspy, whereas Mr. Miller had been her former supervisor.

In *Davis v. Chevron*, the plaintiff complained of the "sexist" comments of one of the seven interviewers, and that his "sexism" resulted in her being denied the desired position. *Davis*, 14 F.3d at 1083-84. The *Davis* court did not agree with the plaintiff, concluding she failed to explain how the alleged gender bias of one of seven interviewers could produce a unanimous decision not to hire. *Id.* at 1086. The instant case requires an even more tenuous connection between Mr. Miller, the person with the alleged bias, and the ultimate decision not to hire Gillaspy. While seven people interviewed and scored Gillaspy, the evidence in the record establishes that the final decision was entirely up to Ms. Hernaez. *See Butler v. Internal Revenue Services*, 73 Fed.Appx. 730, 732 (5th Cir. 2003) (even when evidence of bias is compelling, if the biased individual is not the

7

ultimate decision-maker, the employment decision is not discriminatory).

A plaintiff could still prove discriminatory animus caused the adverse employment action if the plaintiff can show that the final decision-maker acted as a mere rubber stamp of the biased individual. *Nouanesengsy v. City of Arlington, Texas*, 2003 WL 21448596, at *4-5 (N.D. Tex., March 12, 2003) (Means, J.). In this case, the evidence on the record establishes that Ms. Hernaez was the final decision-maker regarding the ACS positions. In support of the "rubber stamp" argument, Gillaspy contends that Ms. Hernaez "based her decision not to retain Gillaspy" on Mr. Miller's false information. She also claims that since none of the interviewers besides Mr. Miller had ever supervised her, any information regarding her leadership abilities and style necessarily came from him. Other than these mere allegations, however, Gillaspy presented no evidence that Ms. Hernaez acted as a "rubber stamp" for Mr. Miller.

To establish the decisionmaker was merely a "rubber stamp," the plaintiff must introduce some evidence that the individual making the discriminatory remarks was the actual decisionmaker behind the adverse employment decision. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000). In *Russell*, an employee on the same level as the plaintiff gave an ultimatum to the plaintiff's supervisor that he would quit if Russell was not fired. *Id.* This particular employee was the son of the Chief Executive Officer of the parent company that controlled the funding for the involved employer. *Id.* at 221. Because of the great informal power this employee enjoyed in light of his

8

father's position, there was evidence from other situations that those in the decision-making roles simply complied with his requests. *Id.* at 228. Therefore, it was not an unreasonable presumption to believe that when he made this statement about a personnel decision involving a co-worker, the decision makers again did as he wished. *See id.*

Unlike in *Russell*, there is no proffered evidence in this case, and, therefore, no reason to believe that Mr. Miller had undue influence over the hiring decision. Other than conclusory statements, Gillaspy offers no evidence that Ms. Hernaez merely "rubber stamped" a hiring decision Mr. Miller made that was motivated by his discriminatory animus. *See id.* On the other hand, the evidence in the record does establish that Ms. Hernaez based her decision not to hire Gillaspy on her own independent evaluation based on all the information given to her by all seven interviewers.

The Court does not find Mr. Miller's statement to be direct evidence of discriminatory animus because it requires the Court to infer that Mr. Miller was an individual with authority over the hiring decision at issue. *See Acker v. Deboer, Inc.*, 429 F.Supp.2d 828, 840 (N.D. Tex. 2006)(Buchmeyer, J.). Gillaspy has not presented the Court with sufficient evidence to establish that any alleged discriminatory animus Mr. Miller had tainted Ms. Hernaez's decision regarding whether to hire Gillaspy. Because inferences must be made to find a discriminatory intent in Mr. Miller's "only men"

9

statement, it is not direct evidence of discriminatory animus related to Gillaspy's claims of failure to re-hire and/or promote her to an ACS position in May/June 2003, August 2003, and June/July 2004, as well as her demotion in May/June 2003 to Facility Supervisor.  Gillaspy must rely on circumstantial evidence to prove these claims.

As for her claim DISD discriminated against her by failing to hire her for other Field Supervisor positions in the Maintenance Department in January 2004 and February 2004, these statements are too attenuated to the hiring decision.  Assuming without deciding that the same group of interviewers and ultimate decisionmaker were involved in hiring for those positions as well, the statement was allegedly made in May 2003.  The positions about which Gillaspy bases her claims were in January 2004 and February 2004, more than seven months after the comment was made.  *See Akop v. Goody Goody Liquor, Inc.*, No. 3:04-CV-2058-D, 2006 WL 119146, *3 (N.D. Tex. Jan. 17, 2006)(Fitzwater, J.)(comment not sufficiently proximate when made eight months before adverse employment action).  Even if the statement was not too attenuated to the decisions, the Court concludes, for the same reasons as previously discussed, that this fails as direct evidence.  Gillaspy must also rely on circumstantial evidence to prove these claims as well.

   2.    Circumstantial Evidence

Although Gillaspy's Title VII claims have not been proven through direct evidence of discrimination, circumstantial evidence may still establish a *prima facie* case of gender

10

discrimination.    The Court employs the three-step, burden-shifting framework established in *McDonnell Douglas*, and further modified by *Desert Palace*, to evaluate the claims.

        a.    Prima Facie Case

As for Gillaspy's claim that DISD failed to re-hire her for other Field Supervisor positions in January 2004 and February 2004, the Court concludes she has failed to establish a prima facie case of gender discrimination.  Gillaspy must establish that: (1) she was not promoted; (2) she was qualified for the positions she sought; (3) she was within the protected class at the time of the failure to promote; and (4) either the position she sought was filled by someone outside the protected class or she was otherwise not promoted because of her sex.  *See Rutherford v. Harris County*, 197 F.3d 173, 179 (5th Cir. 1999).  Both job postings outlined the qualifications, which included a minimum of four years experience in maintenance construction with two years of supervisory experience.  Gillaspy testified in her deposition that she did not have the required experience.  Therefore, she cannot establish a *prima facie* case of her gender discrimination claim as it relates to the Field Supervisor positions in the Maintenance Department.

DISD concedes in its briefing that Gillaspy has established a prima facie case as to (1) the failure to re-hire or promote her to the position of ACS in May/June 2003, August 2003, and June/July 2004, and (2) her demotion in May/June 2003 to Facility

11

Supervisor.  Because this satisfies the first step of the *McDonnell Douglas* test, the Court moves to the second step.

> b.     Legitimate Nondiscriminatory Reason

The burden shifts to DISD to provide a legitimate, nondiscriminatory reason for its decision.

> 1)     May/June 2003 ACS Position and Demotion

Gillaspy concedes that DISD met its burden of providing legitimate, non-discriminatory reasons related to her non-selection for the ACS position in May/June 2003 and her demotion to Facility Supervisor in June 2003.

> 2)     August 2003 ACS Position

Gillaspy argues that DISD failed to meet its burden in relation to DISD's failure to promote her to the ACS position in August 2003.  The evidence establishes that DISD reduced the number of ACS positions after that posting due to a reduction of their "operational areas" and the "areas" supported by the Department.  No one was ever hired for this position, therefore the Court concludes DISD has offered a legitimate, non-discriminatory reason for not hiring her for this position.

> 3)     June/July 2004 ACS Position

Gillaspy also contends DISD failed to meet its burden with respect to the June/July 2004 ACS position.  DISD asserts that Gillaspy was not offered this position because she received the lowest interview scores of any candidate and had a leadership style of

12

being "condescending and abrasive." These are the same reasons she was not re-hired and/or promoted for the May/June 2003 ACS position; reasons that Gillaspy conceded were legitimate, non-discriminatory reasons. In support of their reasons, DISD has provided affidavits, the combined score sheets, and sample yearly evaluation forms of Gillaspy's performance. The ACS job posting specifically included a requirement that an ACS must be able to motivate subordinates and must "demonstrate [a] positive, service-minded attitude and team spirit." Based on her own interview with Gillaspy and the scores and information provided by the other six interviewers, Ms. Hernaez determined that Gillaspy's leadership style did not satisfy that job requirement. The Court concludes that DISD has satisfied its burden of demonstrating a nondiscriminatory reason for the employment decision. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001).

   c.   Pretext and Mixed Motives

Because DISD met its burden of establishing a nondiscriminatory reason, the burden shifts to Gillaspy to provide evidence of pretext and/or mixed motives to create a genuine issue of material fact for trial. Under the pretext scenario, Gillaspy must establish that DISD's reasons are not true, "but [are] instead a pretext for discrimination." *Rachid*, 376 F.3d at 312. Under the mixed motives scenario, Gillaspy must establish that DISD's reasons, although true, are "only one of the reasons for its conduct, and another 'motivating factor' is [Gillaspy's] protected characteristic." *Id.*

13

Under the mixed motives alternative, if she provides sufficient evidence that discrimination was a motivating factor in the employment decision, the burden shifts to DISD to prove that it would have taken the same action regardless of any discriminatory animus. *See Machinchick*, 398 F.3d at 355.

To rebut DISD's proffered reasons, Gillaspy argues the following is evidence of pretext and mixed motive: (1) Mr. Miller's statement of hiring "only men;" (2) DISD "dissembling and covering up" evidence of its discrimination; (3) DISD's use of "selective criterium" in scoring the candidates; (4) DISD's changing reasons for Gillaspy's demotion; and (5) Gillaspy's qualifications for the ACS position as compared to the males who were selected.

### 1)   Mr. Miller's statement

Gillaspy contends that Mr. Miller's "only men" statement, made during her interview, is evidence of both pretext and motivating factor. The Court notes that the body of her argument, however, addresses this statement only in the context of it being evidence of pretext. Therefore, the Court will address it as such.

Under the pretext scenario, this statement must be evidence establishing that DISD's reasons are not true, "but [are] instead a pretext for discrimination." *Rachid*, 376 F.3d at 312. The Court concludes that this statement is not evidence of pretext. To make such a conclusion would require the Court to agree that Ms. Hernaez merely rubber stamped Mr. Miller's hiring recommendation without any other information or

input, or that she was merely a "conduit" of Mr. Miller's discrimination, thereby tainting the employment decision.  *See Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996) (quoting *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990)).   The Court previously discussed *supra* in the Direct Evidence section why there is insufficient evidence to establish this "rubber stamp" or taint argument.   The Court concludes Plaintiff has failed to meet her burden of establishing pretext through the evidence of Mr. Miller's "men only" statement.

2)      DISD Dissembling and Covering Up Evidence

To meet her burden of establishing either pretext or mixed motive, Plaintiff argues DISD dissembled and covered up evidence of discrimination, offering the following evidence:  (1) DISD falsely portrayed the ACS position as different from the eliminated Field Supervisor position; (2) false statements were made about her performance as a Field Supervisor; (3) DISD attempted to hide Mr. Miller's involvement in the decision to demote her; (4) DISD attempted to exaggerate Ms. Hernaez's involvement in the decision to demote Gillaspy; (5) DISD falsified Gillaspy's interview scores; (6) DISD's falsely portrayed Darlene Johnson as someone who knew Gillaspy's job performance; and (7) DISD's mischaracterized the hiring of Anselmo Cardenas.

a)      Differences in Positions

Gillaspy first argues that DISD's "efforts to falsely portray the [ACS] and the Field Supervisor positions as completely different jobs" evidences DISD's pretextual reasons

15

as well as their mixed motives.  The Court finds this argument unpersuasive.  The evidence in the record establishes that the Department went through a reorganization when Aramark took over management.  This included the reduction as well as elimination of certain positions, including Gillaspy's previous position of Field Supervisor.  She was required, as were the other Field Supervisors, to apply for the new ACS positions, the alleged equivalent of the eliminated Field Supervisor.  When she was not promoted to the ACS position, the evidence establishes that she was placed into the next highest level position for which she was qualified.

Plaintiff has presented no competent summary judgment evidence related to this argument whatsoever.  Her argument revolves around DISD "dissembling", or pretending, that the ACS position is different from the Field Supervisor position, and this is evidence of DISD hiding their discriminatory actions.  This argument fails on the grounds of pretext because Gillaspy wholly failed to establish that DISD's reasons are pretext for discrimination.  *Rachid*, 376 F.3d at 312.  Merely claiming that DISD falsely portrayed the nature of these positions does not make it evidence of pretext.  In addition, Gillaspy's mixed motive argument also fails.  Gillaspy fails to establish that DISD's reasons of reorganization, although true, are "only one of the reasons for its conduct, and another 'motivating factor' is [Gillaspy's] protected characteristic."  *Id.* Again, merely making the claim that DISD pretended the ACS position was different from the eliminated Field Supervisor position does not make it evidence that she was

16

discriminated against because of her gender.

          b)        False Statements about Gillaspy's Performance

Gillaspy argues that Mr. Miller's negative statements about her leadership skills and manner towards subordinates and superiors are false. She also contends that the statement from Larry Munson, another of Gillaspy's supervisors, that he met with her on several occasions to discuss these problems is also false.

DISD has maintained that Gillaspy was not selected for the ACS position because (1) she had the lowest interview score of all the applicants and (2) she has an abrasive supervisory manner and lacks leadership skills. DISD is not tasked with the burden of proving that this rationale was actually correct. *Armstrong v. City of Dallas*, 997 F.2d 62, 65 n.5 (5th Cir. 1993). The issue is whether DISD's perception of Gillaspy's performance, whether accurate or not, was the real reason for the adverse employment action. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir. 1999). Gillaspy's evidence centers mostly around her own affidavit testimony as well as her allegation that her appraisals from the previous two years had not reflected any negative comments. This evidence does not meet her burden. It merely evidences a fundamental disagreement between herself and DISD–she maintains that she had no problems with her supervisory skills and manner, while DISD views the situation differently. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (a dispute in the evidence regarding job performance does not supply a sufficient basis for a reasonable

fact finder to infer that the employer's proffered reason is untrue).  The Court concludes Gillaspy's argument is unpersuasive.

c)      Involvement of Mr. Miller and Ms. Hernaez

As evidence of DISD covering up evidence of discrimination, Gillaspy argues DISD attempted to hide Mr. Miller's involvement in her demotion as well as attempted to exaggerate Ms. Hernaez's involvement.  Gillaspy alleges that the information on which the decision not to hire or promote her was made could not have been based on anything other than personal experience with Gillaspy–which Mr. Miller had, but none of the other six interviewers, including Ms. Hernaez, had.

The evidence in the record establishes Ms. Hernaez was the final decision maker related to the hiring for the ACS positions.  Gillaspy has failed to offer any competent summary judgment evidence to the contrary.  The Court does not agree that her role was exaggerated.  In addition, while Gillaspy's leadership style might have been a reason, it was not the only reason as Gillaspy alludes to in her brief.  The evidence establishes that her low interview score, the lowest of any person interviewed, also played a part in the decision.  Furthermore, Gillaspy offers no competent evidence that Mr. Miller was the only possible source of any knowledge related to Gillaspy's leadership and abrasive manner.  She merely makes the claim that any information related to her leadership was the "type of information Hernaez simply did not have independent of Miller."  DISD, on the other hand, provides the affidavit of Darlene Johnson, a former co-worker of

18

Gillaspy's as well as one of the seven interviewers, who testified that, among other things, Gillaspy was "not an effective leader" and that morale among her subordinates was "always low." The Court concludes Gillaspy has failed to present sufficient evidence of pretext and motivating factor based on DISD exaggerating Ms. Hernaez's involvement and hiding Mr. Miller's involvement.

> d)      DISD Falsified Gillaspy's Interview Scores

Gillaspy next argues that DISD falsified the interview scores after she filed her charge with the EEOC. She bases her claim on: (1) Mr. Miller's testimony that he did not score anyone at the time of the interviews; and (2) a summary of the scores created on July 22, 2003, is the only evidence of any scores. Again, other than these bare allegations, Gillaspy had presented no evidence in relation to this argument such that it establishes for the Court that this is evidence of pretext and motivating factor. *See Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (mere allegations "setting forth . . . conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment").

> e)      Knowledge of Gillaspy's Job Performance

Gillaspy contends DISD falsely attempts to portray Darlene Johnson, a former co-worker, as a person who knew of Gillaspy's job performance. Ms. Johnson was one the seven interviewers. In her affidavit, she stated that based on her personal observations of Gillaspy, she concluded Gillaspy was "not an effective leader" and morale among her

subordinates was "always low."

Gillaspy argues Ms. Johnson could not have known anything about her performance because their jobs as Field Supervisors required them to work at different schools (only one Field Supervisor was assigned to any given school); therefore, Gillaspy claims Ms. Johnson had no opportunity to observe her supervisory skills or manner. Consequently, Gillaspy continues, any comments from Ms. Johnson must necessarily be false. Again, there is no competent summary judgment evidence presented by Gillaspy to establish that DISD covered up evidence or that Ms. Johnson could not have made those observations. Therefore, she cannot defeat summary judgment on this basis. *See Clark*, 110 F.3d at 297.

f)      Hiring of Anselmo Cardenas

Gillaspy's last argument in relation to dissembling and covering up is that DISD mischaracterized the hiring of Anselmo Cardenas which is further evidence of pretext and motivating factor. Mr. Cardenas was originally recommended to be hired as an ACS, but failed to meet the minimal job requirements. Gillaspy centers her argument on the premise that although DISD claims Mr. Cardenas was never actually hired as an ACS, the evidence suggests otherwise. In support of her argument, Gillaspy points to DISD's admission to the EEOC that Mr. Cardenas was placed in the ACS position and that his name appears on various organizational and phone director charts and directories.

The Court disagrees with Gillaspy and concludes that the competent summary judgment evidence supports DISD's explanation that Mr. Cardenas was never actually hired.  The names of the people Ms. Hernaez selected and recommended for the ACS positions were forwarded onto DISD's Human Resources Department for processing and background checks.  It was discovered that Mr. Cardenas did not have the required high school diploma or GED.  Upon this discovery, Mr. Cardenas was not hired as an ACS, but continued in his previous position of Trainer/Instructor in the Department.  Gillaspy fails to present competent evidence to establish DISD covered up evidence related to Mr. Cardenas, thereby establishing either pretext or motivating factor.

4)   Subjective Criterium in Scoring

Gillaspy contends that her evidence establishes that DISD used subjective factors in making its hiring decisions and that DISD's explanation for not hiring her is not true.  Furthermore, she contends determining whether the subjective criterium is pretext for discrimination is a credibility issue for the fact finder.  The Court notes that Gillaspy's argument related to subjective criterium addresses only pretext; therefore, the Court will address only the pretext argument.

Gillaspy contends that, although she had the required experience and technical strengths, her non-selection for ACS was based solely on the subjective criterium and the tainted interview score which resulted once the subjective criterium was added to the mix.  Gillaspy argues *Medina* stands for the proposition that because DISD relied upon

subjective factors in not choosing her, this places DISD's credibility into question, which is an issue for the jury to decide.  A more recent Fifth Circuit opinion, however, specifically addresses this issue of an employer's use of subjective criteria.  *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874 (5th Cir. 2003).  The Fifth Circuit held that an employer's use of subjective criteria is not sufficient evidence of pretext of discrimination.  *Id.* at 882.  Although Plaintiff's evidence is probative of some of her qualifications for the ACS position, the evidence does not raise a fact question as to whether DISD's reason for not promoting her to ACS is pretext for discrimination.  *See id.*  Gillaspy has failed to establish that DISD's use of subjective criterium was pretext for discrimination.

### 5)    DISD's Shifting Explanations

Gillaspy argues that DISD has continued to change its reasons for why she was assigned to the position of Facility Supervisor.  Again, Gillaspy's argument addresses only pretext, therefore, the Court will address only this issue.  Discrimination may be inferred when the employer provides inconsistent explanations for the employment action at issue.  *Nichols v. Lewis Grocer*, 138 F.3d 563, 568 (5th Cir. 1998).  A careful review of Gillaspy's specific allegations, however, does not support Gillaspy's argument that DISD's explanation was pretextual.  The Court concludes that, to the contrary, the evidence in the record establishes DISD has been consistent in its explanations.  Gillaspy has failed to meet her burden.

22

6)     Gillaspy's Qualifications Compared to Male Applicants

Gillaspy alleges she was better qualified than five of the males hired for ACS. Gillaspy compares her experience and qualifications, including her training, to those of the five males.   Gillaspy argues she is not required to prove she is "clearly better qualified" than the five men.   She is incorrect.   As recently as April 28, 2006, the Fifth Circuit applied this standard in a discrimination case.   *Shakir v. Prairie View A&M Univ.*, 178 Fed. Appx. 361 (5th Cir. Apr. 28, 2006).   Citing its previous opinion in *Manning*, the Fifth Circuit held that a plaintiff may rebut the defendant's reason of superior qualifications of the promoted employee for the failure to promote the plaintiff as pretext for discrimination by establishing that the plaintiff is "clearly better qualified." *See id.* at *3 (citing *Manning*, 332 F.3d at 882).   Nonetheless, "'unless disparities in curricula vitae are so apparent as to virtually jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question.'"   *Id.* (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)). Applying this standard, the Court concludes Gillaspy failed to sufficiently rebut DISD's reasons.   Although she may have certain experience and training the male candidates did not, this alone does not establish competent evidence she was "clearly better qualified." As the Fifth Circuit has consistently held, her qualifications must "'virtually jump off the page and slap [the court] in the face'" which this Court concludes do not.   *See id.*.

23

Because this Court will not substitute its judgment for those of the interviewers, and particularly Ms. Hernaez who was the decisionmaker, the Court cannot conclude that Gillaspy has shown either pretext or motivating factor based on her qualifications.

The Court concludes that Gillaspy's gender discrimination claims fail because she has failed to meet her burden under the third step of the modified *McDonnell Douglas* test.  Summary judgment should be granted as to all her discrimination claims.

## II.   Retaliation Claims

Gillaspy claims she was retaliated against for filing charges with the EEOC in that she was not promoted to ACS in August 2003 and June/July 2004, nor to other Field Supervisor positions in January 2004 and February 2004 in the Maintenance Department.  (Gillaspy is not pursuing the claim that she was effectively demoted in retaliation for a previous grievance about compensation; therefore, she does not contest partial summary judgment on it.)

### A.       Applicable Law

The traditional burden-shifting framework articulated in *McDonnell Douglas* applies to Gillaspy's retaliation claim.  *Evans v. City of Houston,* 246 F.3d 344, 351 (5th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)).  She must first establish a *prima facie* case of retaliation by showing that:  (1) she engaged in activities protected by Title VII; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between her protected activity and the adverse

24

employment action.  *See Raggs v. Mississippi Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2002); *Evans,* 246 F.3d at 352.  The court notes, however, that the causal link required by the third prong of the *prima facie* case does not rise to the level of a "but for" causation standard.  *Ackel v. Natl. Communications, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003); *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. 2002); *Raggs,* 278 F.3d at 471.

A Title VII lawsuit may be based "not only upon the specific complaints made by the employee's initial charge, but also upon any kind of discrimination *like or related to the charge's allegations,* limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. GAF Chemical Corp.,* 995 F.2d 576, 578 (5th Cir. 1993); *Kojin v. Barton Protective Services,* 339 F. Supp. 923, 926 (S.D. Tex. 2004) (emphasis added).  The purpose of an employment discrimination charge is to put employers on notice of the existence and nature of the charges against them.  *Manning,* 332 F.3d at 878.  Although it is not critical that a claimant assert all of her legal theories in her EEOC charge, she must assert the facts that are the basis for the legal claims.  *Id.* at 879; *Harris v. Parker College of Chiropractic,* 286 F.3d 790, 795 (5th Cir. 2002).  To decide whether a claim is exhausted, the court must determine whether the claimant has included sufficient facts in the EEOC charge to put the employer on notice that the employee might have additional allegations of discrimination.  *Manning,* 332 F.3d at 879 (citing *Hornsby v. Conoco, Inc.,* 777 F.2d 243, 247 (5th Cir. 1985)).

1.      Field Supervisor Positions

The Court concludes that the claims involving the Field Supervisor position in the Maintenance Department posted January 2004 and February 2004 require a separate filing with the EEOC because they involve a different department, different decision-makers, and different job qualifications.  To decide whether a claim is exhausted, the court must determine whether the claimant has included sufficient facts in the EEOC charge to put the employer on notice that the employee might have additional allegations of discrimination.  *Manning,* 332 F.3d at 879.  In this case, Gillaspy filed a charge with the EEOC only in relation to the ACS position of May/June 2003–a position within the Custodial Services Department.  These Field Supervisor positions posted in January 2004 and February 2004 were within the Maintenance Department.  The Court concludes DISD could not have been put on notice that any discrimination allegations would arise from an employment action related to a position in a different department.  Because Gillaspy did not file a separate charge with the EEOC, the Court does not have jurisdiction to review these claims.

Even if the EEOC charge had sufficiently put DISD on notice, Gillaspy's retaliation claim also fails because she cannot establish the third prong, the causal connection between filing her EEOC charge and the adverse employment action.  (DISD concedes that Gillaspy established the first two prongs.)  Gillaspy must show a causal connection between her action of filing the EEOC charge and not being promoted to this position

on both occasions.  She wholly fails to make this connection.  As discussed *supra*, the Field Position was within a different department.  There is no evidence showing who the decisionmaker for this position was (although there is evidence that it was not Ms. Hernaez); therefore, there is no evidence establishing who at DISD within the Maintenance Department knew and retaliated against her by not promoting her to Field Supervisor both times.  There is no competent summary judgment evidence establishing who knew about her protected activity such that she was retaliated against in not being promoted.  *See Manning*, 332 F.3d at 883.  Gillaspy fails to establish a *prima facie* case of retaliation related to the Field Supervisor positions.

2.      ACS Position August 2003

With regard to Gillaspy's claim that she was not promoted to ACS in August 2003, the Court concludes Gillaspy cannot establish a *prima facie* case as to this position. Gillaspy cannot establish the third prong of a causal connection between filing the EEOC charge and her failure to be promoted to this ACS position.  (DISD concedes she established the first two prongs.)  The evidence in the record establishes that no one was chosen for that position at all; instead, fewer ACS positions resulted when DISD reduced the number of "operational areas" and the "areas" supported by the Department.  Once DISD offered a non-discriminatory reason for not promoting her, she was required to offer more evidence beyond mere knowledge to show that the reason is pretextual.  *See Medina*, 238 F.3d at 684.  No further evidence is offered to establish anything to the

contrary.  Gillaspy fails on this retaliation claim on the third prong.

      3.      <u>ACS Position June/July 2004</u>

The only retaliation claim that requires further examination is the failure to promote Gillaspy to ACS in June/July 2004.  (Again, DISD concedes that Gillaspy established the first two prongs.)   Gillaspy must show the causal connection required in the third prong.  Again, Gillaspy's evidence fails to establish that there is a causal connection between her filing an EEOC charge and her failure to be promoted to ACS. An employer's knowledge of the employee's protected activity could be sufficient to establish the causal connection; however, once the employer has offered a non-discriminatory reason, more evidence beyond mere knowledge is required to show that the proffered reason for the adverse action is pretextual.  *Medina*, 238 F.3d at 684.  As discussed *supra*, DISD offered non-discriminatory reasons for not promoting Gillaspy to any of ACS positions–she had the lowest interview score and undesirable supervisory skills.  Gillaspy fails to meet her burden of showing that these reasons were pretextual through competent evidence.  *See id.*

Gillaspy has not set forth any evidence that DISD's decision not to promote and/or hire her for any of these positions was motivated by retaliation.  *See Grimes v. Texas Dept. of Mental Health and Mental Retardation,* 102 F.3d 137, 143 (5th Cir. 1996) (to survive summary judgment, plaintiff must present evidence which constitutes or suggests retaliatory motive by employer).  The Court concludes that summary judgment is

appropriate because the DISD has articulated legitimate reasons for not promoting Gillaspy to an ACS position, and she has not shown the proffered reason was merely pretext. *See Medina,* 238 F.3d at 680.

## IV.  CONCLUSION

For the reasons stated herein, DISD's Motion for Summary Judgment is **GRANTED**, and Gillaspy's claims are hereby **dismissed with prejudice**.  Judgment will be entered by separate document.

**SO ORDERED.**

Signed September 26th, 2006.

ED KINKEADE
UNITED STATES DISTRICT JUDGE